<div style="transform: rotate(-90deg)">

**United States District Court**

For the Northern District of California

</div>

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

MARGARITA REMO,

               Plaintiff,

      v.

WACHOVIA MORTGAGE, A
DIVISION OF WELLS FARGO
BANK, N.A., et al.,

               Defendants.

NO. C11-02935 TEH

ORDER RE: MOTION TO
DISMISS AND MOTION TO
STRIKE

      This matter came before the Court on August 1, 2011, on the motion to dismiss and motion to strike filed by Defendant Wachovia Mortgage, a Division of Wells Fargo Bank, N.A. For the reasons set forth below, the motion to dismiss is GRANTED and the motion to strike is DENIED AS MOOT.

**BACKGROUND**

      On April 15, 2008, Plaintiff Margarita Remo ("Plaintiff" or "Remo") took out a $475,000 home loan from Wachovia Mortgage, FSB.[1] The terms of the loan were memorialized in a note and secured by a deed of trust against 908 Athens Street, San Francisco, California.[2] In 2009, Remo lost her job. She was unable to refinance the loan because the value of her home had declined. She attempted to negotiate with the Defendant

---

    [1]  On a motion to dismiss, the Court must accept as true all material factual allegations in the complaint, as well as any reasonable inferences to be drawn from them. *Ashcroft v. Iqbal*, – U.S. –, 129 S. Ct. 1937, 1949-50 (2009); *Broam v. Brogan*, 320 F.3d 1023, 1028 (9th Cir. 2003).

    [2] The Court takes judicial notice of the deed of trust and other documents recorded in connection with Plaintiff's loan. They are true and correct copies of official public records of the San Francisco Assessor-Recorder's Office, and their authenticity is capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. *See* Fed. R. Evid. 201(b). Remo does not object to the Court taking judicial notice of these or any other documents submitted in support of the motion to dismiss.

to modify her loan and was unsuccessful. She defaulted on the loan.[3] A notice of default was filed against the property on February 8, 2011.

In 2009, Wachovia Mortgage, FSB, the original lender, merged into Wells Fargo Bank, N.A.[4] This entity is now known as Wachovia Mortgage, a division of Wells Fargo Bank, N.A. ("Defendant" or "Wachovia"), a defendant in this case and the moving party on the motions before the Court. Because judicially noticeable documents show that Wachovia and Wachovia Mortgage, FSB, are one and the same, allegations against Wachovia Mortgage, FSB, will be construed as allegations against Defendant Wachovia.

Remo alleges that Wachovia and Remo's loan broker induced Remo to enter the loan by making false promises and misrepresentations regarding the terms of the loan, the duration of the payments, the loan's risks, Remo's ability to refinance, and the value of Remo's home, among other aspects of the transaction. She also alleges that Wachovia improperly serviced her mortgage, refused to refinance or modify the loan, and imposed illegitimate fees and payments. On May 16, 2011, Remo filed suit against Wachovia and Cal-Western Reconveyance Corporation ("Cal-Western") in San Francisco County Superior Court. Wachovia removed to this Court on June 15, 2011. Remo brings five claims against Wachovia and Cal-Western, and six claims against Wachovia only. On June 22, 2011, Wachovia filed a motion to dismiss and a motion to strike. These motions are now before the Court.

**LEGAL STANDARD**

Dismissal is appropriate under Federal Rule of Civil Procedure 12(b)(6) when a plaintiff's allegations fail "to state a claim upon which relief can be granted." In ruling on a

---

[3] This fact, while not contained in Remo's Complaint, was confirmed by Remo at oral argument.

[4] The Court grants Defendant's request for judicial notice of Exhibits A through E, which establish the history of Wachovia Mortgage, FSB. The Court finds that these are true and correct copies of documents reflecting official acts of the executive branch of the United States, and that they are judicially noticeable pursuant to Rule 201(b)(2) of the Federal Rules of Evidence.

United States District Court
For the Northern District of California

motion to dismiss, the Court must "accept all material allegations of fact as true and construe the complaint in a light most favorable to the non-moving party." *Vasquez v. L.A. County*, 487 F.3d 1246, 1249 (9th Cir. 2007). Courts are not, however, "bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 129 S. Ct. at 1949-50.

A Rule 12(b)(6) dismissal "can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). To survive a motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Plausibility does not equate to probability, but it requires "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 129 S. Ct. at 1949. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Dismissal of claims that fail to meet this standard should be with leave to amend unless it is clear that amendment could not possibly cure the complaint's deficiencies. *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1296 (9th Cir. 1998).

**DISCUSSION**

Wachovia asks the Court to dismiss the following state law claims against it: (1) unfair competition under California's Unfair Competition Law ("UCL"), California Business and Professions Code section 17200 *et seq.* (first claim); (2) constructive fraud (second claim); (3) breach of the implied covenant of good faith and fair dealing (third claim); (4) misrepresentation (fourth claim); (5) negligence (fifth claim); (6) negligent infliction of emotional distress (sixth claim); (7) intentional infliction of emotional distress (seventh claim); (8) breach of fiduciary duty (eighth claim); (9) predatory lending (ninth claim); (10) conversion (tenth claim); and (11) breach of contract (eleventh claim).

In her opposition, Remo defends seven of her eleven claims against Wachovia. When asked at oral argument about the other four claims, Remo stated that she does not oppose dismissal of these claims. Accordingly, Wachovia's motion to dismiss Remo's claims for

3

United States District Court

For the Northern District of California

1  constructive fraud (second claim), misrepresentation (fourth claim), negligence (fifth claim),

2  and conversion (tenth claim) is GRANTED.

3      Wachovia argues that Remo's remaining claims are preempted by the Home Owners'

4  Loan Act ("HOLA"), 12 U.S.C. § 1461, *et seq.*, and that they otherwise fail to state a claim

5  upon which relief can be granted. Remo's opposition is silent with regard to HOLA

6  preemption and many of the other arguments offered by Wachovia in support of its motion to

7  dismiss. When asked at oral argument if she wished to offer additional authority or analysis

8  in support of her claims, Remo declined to do so. The Court is persuaded that HOLA

9  operates to preempt Remo's claims against Wachovia,[5] and Remo has offered the Court no

10  reason to doubt the analysis set forth below.

11      Congress enacted HOLA "to charter savings associations under federal law, at a time

12  when record numbers of homes were in default and a staggering number of state-chartered

13  savings associations were insolvent." *Silvas v. E\*Trade Mortg. Corp.*, 514 F.3d 1001, 1004

14  (9th Cir. 2008). The court in *Silvas* explained further:

15      HOLA was designed to restore public confidence by creating a
       nationwide system of federal savings and loan associations to be
16      centrally regulated according to nationwide best practices. We
       have described HOLA and its following agency regulations as a
17      radical and comprehensive response to the inadequacies of the
       existing state system, and so pervasive as to leave no room for
18      state regulatory control. [B]ecause there has been a history of
       significant federal presence in national banking, the presumption
19      against preemption of state law is inapplicable.

20  514 F.3d at 1004-05 (quotations and citations omitted) (alteration in original).

21      Congress, through HOLA, gave the Office of Thrift Supervision ("OTS") "broad

22  authority to issue regulations governing thrifts." *Id.* at 1005 (citing 12 U.S.C. § 1464). One of

23  the regulations issued by OTS, 12 U.S.C. § 560.2 ("§ 560.2"), deals with preemption, and the

24  Ninth Circuit has held that this regulation has no less preemptive effect than HOLA itself. *Id.*

25  The regulation has three main sections – 560.2(a), 560.2(b), and 560.2(c). Section 560.2(a)

26  provides that

27  _____

28      [5] Remo does not contest Wachovia's assertion that it is subject to HOLA and OTS
       regulations because Wachovia Mortgage, FSB, was a federal savings association at the time
       it entered into Remo's loan.

OTS hereby occupies the entire field of lending regulation for federal savings associations. OTS intends to give federal savings associations maximum flexibility to exercise their lending powers in accordance with a uniform federal scheme of regulation. Accordingly, federal savings associations may extend credit as authorized under federal law, including this part, without regard to state laws purporting to regulate or otherwise affect their credit activities, except to the extent provided in paragraph (c) of this section . . . .

12 C.F.R. § 560.2(a). Section 560.2(b) offers "illustrative examples" of state laws preempted by HOLA, and § 560.2(c) does the same for state laws generally not preempted. 12 C.F.R. §§ 560.2(b), (c). Of the specific types of state laws that are preempted under § 560.2(b), Wachovia argues that four are applicable to this case. Section 560.2(b) states that "the types of state laws preempted by [§ 560.2(a)] of this section include, without limitation, state laws purporting to impose requirements regarding:

. . . .

(4) The terms of credit, including amortization of loans and the deferral and capitalization of interest and adjustments to the interest rate, balance, payments due, or term to maturity of the loan, including the circumstances under which a loan may be called due and payable upon the passage of time or a specified event external to the loan;

(5) Loan-related fees, including without limitation, initial charges, late charges, prepayment penalties, servicing fees, and overlimit fees;

. . . .

(9) Disclosure and advertising, including laws requiring specific statements, information, or other content to be included in credit application forms, credit solicitations, billing statements, credit contracts, or other credit-related documents and laws requiring creditors to supply copies of credit reports to borrowers or applicants;

(10) Processing, origination, servicing, sale or purchase of, or investment or participation in, mortgages;

. . . .

12. C.F.R. §§ 560.2(b)(4), (5), (9), (10).

Section 560.2(c) provides that

[s]tate laws of the following types are not preempted to the extent that they only incidentally affect the lending operations of

5

Federal savings associations or are otherwise consistent with the purposes of [§ 560.2(a)]:

(1) Contract and commercial law;

(2) Real property law;

(3) Homestead laws specified in 12 U.S.C. 1462a(f);

(4) Tort law;

(5) Criminal law; and

(6) Any other law that OTS, upon review, finds:

(i) Furthers a vital state interest; and

(ii) Either has only an incidental effect on lending operations or is not otherwise contrary to the purposes expressed in paragraph (a) of this section.

12. C.F.R. 560.2(c).

Wachovia argues that all of Remo's claims are preempted by various provisions of § 560.2(b). Most of these claims appear to arise in contract, tort, or real property law – areas identified in § 560.2(c) as generally not preempted. However, according to Ninth Circuit precedent, a court must analyze state law under § 560.2(b) before turning to § 560.2(c). As the court in *Silvas* explained:

> When analyzing the status of state laws under § 560.2, the first step will be to determine whether the type of law in question is listed in paragraph (b). If so, the analysis will end there; the law is preempted. If the law is not covered by paragraph (b), the next question is whether the law affects lending. If it does, then, in accordance with paragraph (a), the presumption arises that the law is preempted. This preemption can be reversed only if the law can clearly be shown to fit within the confines of paragraph (c). For these purposes, paragraph (c) is intended to be interpreted narrowly. Any doubt should be resolved in favor of preemption.

*Silvas*, 514 F.3d at 1005 (citing OTS, Final Rule, 61 Fed. Reg. 50951, 50966-67 (Sept. 30, 1996)). As the court in *Silvas* made clear, OTS's construction of its own authority "must be given controlling weight." *Id.* at 1005 n.1. The court also interpreted the first step in the OTS's analysis to require courts to determine whether a given state law, "as applied," is a type of law listed in § 560.2(b). *Id.* at 1006. For example, in finding that California's unfair competition law was preempted by HOLA, the Ninth Circuit examined the plaintiffs' factual

United States District Court

For the Northern District of California

allegations in support of the claim rather than the text of the law giving rise to the claim. *Id.* The claim at issue in *Silvas* challenged the defendant's practice of misrepresenting consumers' legal rights in advertisements and other documents, and the court held that this claim was preempted by § 560.2(b)(9) "because the alleged misrepresentation is contained in advertising and disclosure documents." *Id.* The claim also challenged a fee charged by the defendant, and the court held that § 560.2(b)(5) "specifically preempts state laws purporting to impose requirements on loan related fees." *Id.*

Though they vary in the specificity of their allegations, Remo's claims rest upon facts relating to the loan origination process, Wachovia's servicing of the loan, and the terms of the loan. Remo's UCL claim is based upon the "untrue and misleading statements" that induced Remo to enter into the loan. Compl. ¶ 47. Her breach of the implied covenant of good faith and fair dealing claim alleges that Wachovia failed to accurately credit Remo's extra payments, that it refused to modify or refinance the loan, and that Wachovia charged unconscionable monthly payments. Remo's negligent infliction of emotional distress claim alleges that Wachovia breached the duty of care by placing Remo into a risky loan that she could not afford. Her intentional infliction of emotional distress claim is based upon various promises Wachovia or the loan broker allegedly made to encourage Remo to enter into the loan, as well as their omission of warnings regarding the risks and the terms of the loan. Remo's breach of fiduciary duty claim alleges that Wachovia fraudulently enticed Remo to accept the loan terms by using low underwriting standards, encouraging Remo to accept the loan, focusing on the money to be made from the transaction, and inflating the value of the property. Her predatory lending claim chronicles Wachovia's allegedly unfair, deceptive, and fraudulent conduct "during the loan origination process." Compl. ¶ 128. Finally, Remo's breach of contract claim alleges that Wachovia is liable for numerous misrepresentations and false promises, as well as the fact that it failed to accurately credit Remo's payments and demanded unwarranted costs and fees under threat of foreclosure.

All of these allegations fall within § 560.2(b), and are therefore preempted. The informational harms that Remo alleges – the false promises, the misrepresentations, the

omissions – might be preempted by § 560.2(b)(9), which bars state claims that challenge disclosures in credit-related documents and advertising. 12 C.F.R. § 560.2(b)(9). Even if not, they are preempted by 560.2(b)(10), which preempts state claims that have to do with the "[]processing, origination, [and] servicing . . ." of mortgages.  12 C.F.R. § 560.2(b)(10). Remo clearly challenges the means by which her loan originated. Other courts have held that similar allegations regarding a lender's false promises to induce a borrower to enter a loan were preempted by HOLA. *See, e.g.*, *Rivera v. Wachovia Bank*, 2009 U.S. Dist. LEXIS 6391, at *7-*8 (S.D. Cal. Aug. 4, 2009). Thus claims that challenge the means by which Wachovia or Remo's loan broker encouraged Remo to enter into the loan are preempted.

To the extent that Remo's allegations challenge the very fact that Wachovia entered the loan with Remo, and the circumstances under which she did enter the loan, these allegations have to do with the origination of Remo's loan and are therefore preempted by§ 560.2(b)(10). 12 C.F.R. § 560.2(b)(10).

Remo's claims also challenge Wachovia's conduct after Remo entered into the loan. Allegations that Wachovia improperly credited Remo's payments fall within § 560.2(b)(10), which preempts claims relating to the servicing and processing of mortgages. 12 C.F.R. § 560.2(b)(10). Remo's claims resting upon Wachovia's refusal to modify or refinance the loan are also preempted by § 560.2(b)(10) because they too involve the servicing of mortgages. 12 C.F.R. § 560.2(b)(10). To the extent that Remo's claims allege that modification or refinancing was a term of credit, they might also be preempted by § 560.2(b)(4). 12 C.F.R. § 560.2(b)(4). Finally, Remo's allegations that Wachovia charged unconscionable monthly payments as well as unwarranted costs and fees under threat of foreclosure fall within § 560.2(b)(4), which preempts claims that challenge the terms of credit, and § 560.2(b)(5), which preempts claims aimed at loan-related fees. 12 C.F.R. §§ 560.2(b)(4), (5). Accordingly, Wachovia's motion to dismiss the remaining seven claims is GRANTED.

At oral argument, the Court asked Remo to state any additional facts or legal theories that she would plead if the Court were to grant her leave to amend her Complaint. At first Remo offered none, explaining that discovery would be necessary to determine whether

United States District Court

For the Northern District of California

1   additional factual or legal bases exist for her claims. She later made reference to facts in the

2   Complaint having to do with the tolling of statutes of limitations. Facts that might toll a

3   statute of limitations are irrelevant to the Court's preemption analysis. Remo also posited that

4   Wachovia's failure to negotiate with Remo violated California Civil Code section 2923.5.

5   However, "the overwhelming weight of authority has held that a claim under section 2923.5

6   is preempted by HOLA." *Taguinod v. World Savings Bank*, 755 F.Supp.2d 1064, 1074 (C.D.

7   Cal. 2010); *see also Ngoc Nguyen v. Wells Fargo Bank, N.A.*, 749 F. Supp. 2d 1022, 1033

8   (N.D. Cal. 2010); *but see Mabry v. Superior Court*, 185 Cal. App. 4th 208, 214 (2010).

9   Because Remo has made it clear that she is aware of no facts or legal theories that could cure

10  the Complaint's deficiencies with respect to Wachovia, leave to amend is DENIED. Remo's

11  eleven claims against Wachovia are DISMISSED WITH PREJUDICE.

12

13  **II. Motion to Strike**

14       Because Remo's claims against Wachovia do not survive the motion to dismiss,

15  Wachovia's motion to strike portions of the Complaint is DENIED AS MOOT.

16

17  **CONCLUSION**

18       Wachovia's motion to dismiss is GRANTED and Remo's claims against Wachovia

19  are DISMISSED WITH PREJUDICE. Wachovia's motion to strike is DENIED AS MOOT.

20

21  **IT IS SO ORDERED.**

22

23  Dated:  8/5/11

    _____
24  THELTON E. HENDERSON, JUDGE
    UNITED STATES DISTRICT COURT

25

26

27

28

9